**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NOS. 0:11-CV-128; 0:11-CV-129; 0:11-CV-130; 0:11-CV-131; 0:11-CV-132; 0:11-CV-133; 0:11-CV-134; 0:11-CV-135; 0:11-CV-136**

**IN RE: APPALACHIAN FUELS, LLC, ET AL.**                    **Adv. Proc. No. 11-01041**

     **Debtors**
_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**                    **PLAINTIFF**
**OF APPALACHIAN FUELS, LLC**


**VS.**                    **MEMORANDUM OPINION AND ORDER**


**ENERGY COAL RESOURCES, INC. ET AL.**                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \*

### I.    INTRODUCTION

This bankruptcy adversary proceeding comes before the Court on several Defendants' and Plaintiff's motions to withdraw the reference to the United States Bankruptcy Court for the Eastern District of Kentucky.  On June 11, 2009, several creditors filed an Involuntary Petition against Debtor Appalachian Fuels, LLC ("the Debtor") under Chapter 7 of the United States Bankruptcy Code.  (09-10343; Doc. # 1).  Thereafter, some of the Debtor's affiliates filed Chapter 11 petitions.  On June 29, 2009, the Bankruptcy Court converted the Debtor's Chapter 7 bankruptcy to a Chapter 11.  (09-10343; Doc. # 144).  On July 14, 2009, the Court appointed the Official Committee of Unsecured Creditors

1

of Appalachian Fuels, LLC ("the Committee")[1].  (09-10343; Doc. # 194).  On July 17, 2009,

the Court ordered that the Debtor's Chapter 11 bankruptcy be jointly administered with the

bankruptcies of its affiliates.[2]

On June 22, 2011, the Committee filed its Complaint, commencing the above-

captioned adversary proceeding.  (11-1041; Doc. # 1).  On August 19, 2011, the Committee

filed its First Amended Complaint.  (11-1041; Doc. # 20).  The Amended Complaint asserts

107 separate causes of action against 37 different defendants.  (Id.).

This matter is currently before the Court on Defendant Business Aircraft Leasing,

Inc.'s (BALI) Motion to Withdraw the Reference (11-128; Doc. # 1), Defendants Bruce

Addington, Erik Addington, EBA Development LLC, and Horsepower Leasing, LLC's Motion

to Withdraw the Reference (11-129; Doc. # 1), Defendants Machinery Sales and Service,

LLC, John C. Smith, and Jeffrey Muncy's Motion to Withdraw the Reference (11-130; Doc.

# 1), Defendants Energy Coal Resources, Inc. (ECR), Illinois Fuel Company, Inc., and

Stephen Addington's Motion to Withdraw the Reference (11-131; Doc. # 1), Defendants

Robert Addington, Frank Bennett, Julie Hudson, David Jones, Mark Garrett Smith, and

Gregory Stumbo's Motion to Withdraw the Reference (11-132; Doc. # 1), Defendants Larry

Addington, Addington Aviation, LLC, Addington Land Company, Appalachian Machinery,

Inc. (AMI), Big Sandy Properties, LLC, Carbon Fuels Illinois, LLC, Larry Austin Dickerson,

---

[1] On January 23, 2012, the Bankruptcy Court entered an Order substituting The Liquidating Trustee of App Fuels Creditors Trust as Plaintiff in the adversary proceeding.  (11-01041; Doc. # 160).

[2] The cases being jointly administered with Appalachian Fuels, LLC, Case No. 09-10343 include: Appalachian Holding Company, Inc., Case No. 09-10372; Appalachian Premium Fuels, LLC, Case No. 09-10373; Appalachian Environmental, LLC, Case No. 09-10374; Kanawha Development Corporation, Case No. 09-10375; Appalachian Coal Holdings, Inc., Case No. 09-10405; and Southern Eagle Energy, LLC, Case No. 09-10406.

2

Midwestern Biofuels, LLC, Pyramid Island Development, Inc., Kathryn Reid, and Task Trucking, Inc.'s Motion to Withdraw the Reference (11-133; Doc. # 1), Plaintiff Official Committee of Unsecured Creditors' Conditional Motion to Withdraw the Reference (11-134; Doc. # 1), Defendant Jet Support Services, Inc.'s Motion to Withdraw the Reference (11-135; Doc. # 1), and Defendant Tri-State Airport Authority's Motion to Withdraw the Reference (11-136; Doc. # 1).  The motions have been fully briefed, and oral argument was held on April 11, 2012 in Covington.  The matter is now ripe for review.  For the reasons stated herein, the moving parties' motions to withdraw the reference are hereby **DENIED**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Committee commenced this adversary proceeding to (1) avoid and recover funds that were allegedly fraudulently or preferentially transferred to the Defendants; (2) recover damages arising out of Defendants' corporate waste, breaches of fiduciary duty, civil conspiracy, unjust enrichment, and aid and abetment of other Defendants in doing the same; and (3) recover damages arising from the legal malpractice and conflicted representation committed by Appalachian Fuels' attorneys.[3]  (11-1041; Doc. # 20, ¶ 1). The Committee alleges that Appalachian Fuels was reduced to an "insolvent husk" as the result of self-dealing by brothers Larry and Stephen Addington (along with other family members and friends) who "surreptitiously used Appalachian Fuels to generate funds and

---

[3] The Committee alleges it has standing to pursue the claims asserted in the Amended Complaint pursuant to (a) the Order Conferring Standing on the Official Committee of Unsecured Creditors of Appalachian Fuels, LLC to Pursue Related Party Claims on Behalf of the Estates, dated February 12, 2010 (09-10343; Doc. # 907); (b) the Unopposed Order Concerning Related Party Claims, dated March 4, 2010 (09-10343; Doc. # 933); and/or (c) the Agreed Order Conferring Standing on the Official Committee of Unsecured Creditors of Appalachian Fuels, LLC to Pursue Recovery Actions on Behalf of the Estates, dated April 11, 2011.  (11-1041; Doc. # 20, ¶ 13).  None of the Defendants refute that the Committee has standing to bring this adversary proceeding.

acquire assets that they then transferred to themselves and numerous corporate alter egos," referred to in the Amended Complaint as "Insiders." (*Id.* at 2). For several years, the Insiders forced Appalachian Fuels to enter into several transactions that benefitted themselves at the expense of Appalachian Fuels and its creditors. (*Id.* at 3). These transactions shifted valuable assets to the Insiders while leaving any associated liabilities with Appalachian Fuels. (*Id.*). This continued even after Appalachian Fuels became insolvent and had been forced into bankruptcy. (*Id.*). Thus, the Insiders actually intended to and did remove assets from the reach of creditors for their own benefit. (*Id.*).

Defendants ECR, Illinois Fuel, Stephen Addington, Larry Addington, Addington Land, AMI, Big Sandy, and Task Trucking have each filed proofs of claims against the Debtor's estate in the underlying bankruptcy action. Plaintiff's final claim in the Amended Complaint is an objection to these proofs of claim. Pursuant to 11 U.S.C. § 502(d), Plaintiff requests that the Court disallow Defendants' proofs of claim against the Debtor's estate. The remaining Defendants did not file proofs of claim.

On October 19, 2011, the parties entered into a stipulation to designate which of the claims asserted by the Committee are core and which are non-core.[4] This stipulation was signed by the bankruptcy judge and filed on October 20, 2011. (11-1041; Doc. # 20). The stipulation specifically notes that all parties entered the stipulation "with the explicit understanding that they are not endorsing the designation of any other Defendant." (*Id.* at 2 n.4). Furthermore, it states that "each Defendant takes no position as to whether any

---

[4] Defendant Frost Brown Todd declined to enter into the stipulation because it objects to Branch Banking & Trust's (BB&T) characterization of its own claims as "core." Although the stipulation states that Defendant Gregory "Bernie" Mason participated in the designation of claims, Mason states in his response in opposition to the motions to withdraw the reference that he did not participate in the stipulation of the designation of claims.

other Defendant's designation of claims as core or non-core are correct." (*Id.* at 3).

With the exception of Defendant Mason's First Set of Interrogatories and Requests for Production of Documents (11-1041; Doc. # 52), discovery has not yet commenced in the adversary proceeding.  Currently pending before the Bankruptcy Court are six motions to dismiss.  (11-1041; Docs. # 53, 58, 61, 64, 68, 130).  However, on February 3, 2012, the Bankruptcy Court ordered that all matters in the adversary proceeding be stayed pending disposition of the motions to withdraw the reference presently before this Court.  (11-1041; Doc. # 172).

### III.   ANALYSIS

District courts have original and exclusive jurisdiction over "all cases under title 11." 28 U.S.C. § 1334(a).  District courts also have original but not exclusive jurisdiction over all civil proceedings "arising under title 11" or "arising in or related to cases under title 11." § 1334(b).  Proceedings that arise in a bankruptcy case or under title 11 are deemed "core proceedings," while those that are otherwise related to a case under title 11 are considered "non-core proceedings."  *Stern v. Marshall*, 564 U.S. ----, 131 S. Ct. 2594, 2605 (2011) (citing 28 U.S.C. § 157(b), (c)).  A district court may refer any or all actions within its bankruptcy jurisdiction to the bankruptcy judges for that district.  28 U.S.C. § 157(a).  The Eastern District of Kentucky's August 15, 1984 Standing Order requires automatic reference of all bankruptcy cases to the Bankruptcy Court in this district.  Moreover, pursuant to Local Rule 83.12, all matters arising under or arising in or related to cases arising under title 11 are referred to the Bankruptcy Court.

A party may move to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), which provides that:

5

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

According to the statute, there are both mandatory and discretionary withdrawals.  In the present case, Plaintiff and moving Defendants assert that discretionary withdrawal is appropriate.  Thus, the Court may grant discretionary withdrawal of the reference if the motion was "timely," and the movants have shown "cause."

A.    **Timeliness of the Motions**

The first issue is whether the motions to withdraw the reference are timely.  28 U.S.C. § 157(d).  Timely refers to "as soon as possible after the moving party is aware of grounds for withdrawal of reference" or "at the first reasonable opportunity after the moving party is aware of grounds for withdrawal of reference."  *In re Black Diamond Mining Co., LLC*, No. 10-84, 2010 WL 5173271, at *1 (E.D. Ky. Dec. 14, 2010) (quoting *In re Mahlman*, 149 B.R. 866, 869 (N.D. Ill. 1993)).  The timeliness requirement prevents parties from "forum shopping, stalling, or otherwise engaging in obstructionist tactics."  *Id.* (quoting *In re Mahlman*, 149 B.R. at 869).  This adversary proceeding was initiated on June 22, 2011.  (11-1041; Doc. # 1).  Plaintiff's Amended Complaint was filed on August 19, 2011.  (11-1041; Doc. # 20).  The moving parties' motions to withdraw the reference were filed between October 31 and November 10, 2011, less than three months after the Amended Complaint was filed.  (11-1041; Docs. # 63, 71, 73, 76, 77, 91, 100, 106, 110).  Furthermore, at oral argument, counsel for Defendant Frost Brown Todd indicated that the

moving Defendants advised Plaintiff early on that they intended to file motions for withdrawal of the reference.  None of the objecting parties assert that the motions were untimely, and the Court finds that the motions are timely.

**B.   Cause for Withdrawal of the Reference**

A district court may grant discretionary withdrawal of reference "for cause shown." 28 U.S.C. § 157(d).  Although "cause" is not defined in the Bankruptcy Code, most courts consider the following factors to determine whether cause exists: (1) judicial economy; (2) uniformity in bankruptcy administration; (3) reducing forum shopping and confusion; (4) fostering economical use of the debtor's and creditor's resources; (5) expediting the bankruptcy process; and (6) the presence of a jury demand.  *In Re Angelucci*, No. 09-70, 2009 WL 798805, at *3 (E.D. Ky. Mar. 23, 2009) (citing *Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751, 754 (W.D. Ky. 1995)).  Other courts in this circuit have found that discretionary withdrawal of reference requires a "compelling" cause.  *See In re Washington Mfg. Co.*, 133 B.R. 113, 116 (M.D. Tenn. 1991) ("[O]nly a compelling cause warrants withdrawal from the automatic reference to bankruptcy under the non-mandatory provision."); *In re Onyx Motor Car Corp.*, 116 B.R. 89, 91 (S.D. Ohio 1990) ("Let it be clear, without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received by this Court.").  Indeed, when considering § 157(d), Congress indicated that there was no intention to allow this subsection to become "an escape hatch through which most bankruptcy matters will be removed to the District Court from the bankruptcy court."  *In re Onyx Motor Car Corp.*, 116 B.R. at 91 (quoting 100 Cong. Rec. H1850) (internal quotations omitted).

Furthermore, in considering whether a withdrawal motion should be granted, "whether a proceeding is core or non-core ... is a central question." *In re Black Diamond Min. Co., LLC*, 2010 WL 5173271, at *2; *see also e.g., Boyd v. King Par, LLC*, No. 1:11-CV-1106, 2011 WL 5509873, at *1 (W.D. Mich. Nov. 10, 2011); *Welch v. Gordulic*, No. 10-MC-37, 2011 WL 2490943, at *1-2 (N.D. Ohio June 22, 2011). "The relevance of the core/non-core distinction is that the bankruptcy court may generally enter final orders and judgment in core proceedings, but must submit proposed findings of fact and conclusions of law to the district court in non-core proceedings." *Boyd*, 2011 WL 5509873, at *1 (citing 28 U.S.C. § 157(b)(1), (c)(1); *see also Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. ... Thus once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."). However, whether a proceeding is core or non-core will not alone determine whether the proceeding must be withdrawn. District courts may withdraw both core and non-core proceedings. *In re Holman*, 325 B.R. 569, 572 (E.D. Ky. 2005) (citing 28 U.S.C. § 157(d)).

### 1.    Core vs. Non-core

Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and enter final judgments in "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," subject to discretionary review by the district court under § 158. Additionally, Congress provided a non-exhaustive list of "core" matters under § 157(b)(2).

For example, core proceedings include: (1) counterclaims by the estate against persons filing claims against the estate; (2) proceedings to determine, avoid, or recover preferences and fraudulent conveyances; and (3) orders to turn over property of the estate.  28 U.S.C. § 157(b)(2)(C), (E), (F), (H).  A bankruptcy judge may also hear non-core proceedings that are otherwise related to a case under title 11.  § 157(c)(1).  In such proceedings, the bankruptcy judge submits "proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  *Id.* However, with the consent of all parties, the district court may refer non-core proceedings to a bankruptcy judge to enter final orders and judgments, subject to discretionary review under § 158.  § 157(c)(2).

Several of the moving Defendants argue that the Court should withdraw the reference of the instant adversary proceeding because it involves, for the most part, non-core claims.  In support of their argument, Defendants allege that the Supreme Court's recent opinion in *Stern v. Marshall*, 564 U.S.----, 131 S. Ct. 2594 (2011) invalidates 28 U.S.C. §§ 157(b)(2)(F) and (H) as a basis for bankruptcy courts to enter final orders and judgments in fraudulent transfer and preference actions where, as here, they have not filed a proof of claim against the bankruptcy estate.[5]  There is no disagreement that Plaintiff's state law tort claims arising out of Defendants' alleged corporate waste, breaches of

---

[5] As stated previously, Defendants Larry Addington, Stephen Addington, Addington Land, AMI, Big Sandy, ECR, Illinois Fuel, and Task Trucking have all filed proofs of claim in the underlying bankruptcy proceeding.  These Defendants' arguments will be addressed in turn.

fiduciary duty, civil conspiracy, unjust enrichment, and aid and abetment of other Defendants in doing the same are clearly non-core claims under § 157(c)(1).

In *Stern*, the Supreme Court found that Congress' enumeration of core matters in § 157(b)(2) overstepped constitutional boundaries in at least one respect and therefore determined that "identifying a claim as 'core' or 'non-core' under [§ 157(b)(2)] does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464 (S.D.N.Y. 2011). It is worth noting the unique facts of the case. After her husband died without including her in his will, Vickie Lynn Marshall filed suit in state probate court alleging that her husband's son fraudulently induced his father to sign a living trust that did not include her despite his purported intent to leave her half of his estate. Vickie then filed for bankruptcy in federal court. The son filed a complaint in the federal proceeding, claiming that Vickie had defamed him by inducing her lawyers to tell members of the press that he had engaged in fraud to gain control of his father's assets. He sought a declaration that his defamation claim was not dischargeable in the bankruptcy proceedings. Then, Vickie filed a counterclaim for tortious interference with the gift she expected from her deceased husband's estate.

The Supreme Court found that although the bankruptcy court had statutory authority, pursuant to § 157(b)(2)(C), to enter a final judgment on the state law counterclaim, it lacked constitutional authority to do so under Article III. *Stern*, 131 S. Ct. at 2608. The Court stated that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The Court emphasized that the issue before it was

10

a "narrow one" and that its decision would not change "all that much."   *Id.* (internal quotations omitted).   Furthermore, the Court concluded that "Congress, *in one isolated respect*, exceeded the limitation in the Bankruptcy Act of 1984."   *Id.* (emphasis added).

Statutorily defined core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H).  A proceeding under 11 U.S.C. § 548, which authorizes a trustee to set aside fraudulent conveyances made within two years of the filing of a bankruptcy petition, is undoubtedly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).   However, whether a state fraudulent transfer claim is also considered a core proceeding under the statute is less clear.   Under 11 U.S.C. § 544, a trustee may bring a state fraudulent conveyance action to set aside a conveyance that an unsecured creditor could have set aside under state law.   Based upon the plain language of 28 U.S.C. § 157(b)(2)(H), there is no indication that Congress intended to limit the statute's application to only federal fraudulent conveyance proceedings.   Moreover, the fact that the substantive law applied in a § 544 proceeding would be state law is of no consequence, as "the claim still arises under title 11 because it is the bankruptcy code that transfers the cause of action from the creditor to the trustee."   *XL Sports, Ltd. v. Lawler*, 49 F. App'x 13, 21 (6th Cir. 2002) (table) (citing *In re Mankin*, 823 F.2d 1296, 1298-1300 (9th Cir. 1987) (concluding that a fraudulent conveyance action under 11 U.S.C. § 544(b), which gives the trustee the same power to avoid any conveyances which an unsecured creditor would have under state law, was a core proceeding)); *see also In re Bliss Technologies, Inc.*, 307 B.R. 598, 604-05 (Bankr. E.D. Mich. 2004).  28 U.S.C. § 157(b)(3) also states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."   Therefore, regardless of

11

whether the fraudulent transfer claims are brought under § 548 or § 544, they are considered core claims. *XL Sports, Ltd.*, 49 F. App'x at 21 ; *see also Boyd v. King Par, LLC*, No. 1:11-cv-1106, 2011 WL 5509873, at *1 (W.D. Mich. Nov. 10, 2011).  Likewise, pursuant to 28 U.S.C. § 157(b)(2)(F), "proceedings to determine, avoid, or recover preferences" under § 547 are statutorily defined core proceedings.

The question now becomes whether the holding of *Stern* renders unconstitutional fraudulent conveyance and preference proceedings statutorily defined by Congress as core.  First, it should be noted that there is a disagreement among courts regarding the extent to which *Stern* will impact the bankruptcy court's authority to enter final orders and judgments in other core proceedings.  *Compare In re Safety Harbor Resort & Spa*, 456 B.R. 703 (Bankr. M.D. Fla. 2011) (holding that the bankruptcy court has authority to enter final judgments in fraudulent transfer actions because nothing in *Stern* actually limits a bankruptcy court's authority to adjudicate the other "core proceedings" identified in § 157(b)(2)) *with In re Heller Ehrman LLP*, 464 B.R. 348 (N.D. Cal. 2011) (holding that the bankruptcy court lacks constitutional authority to enter final judgments in fraudulent conveyance claims).

In its decision, the Supreme Court clearly intended to, and did in fact, limit the application of its holding.  The Court stated:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article.  We conclude today that Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984.  The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a *state law counterclaim* that is *not resolved in the process of ruling on a creditor's proof of claim*.

*Stern*, 131 S. Ct. at 2620 (emphasis added).  Notably, the Court did not find that the

bankruptcy court lacked constitutional authority to enter a final judgment on *all* state law counterclaims.  *See id.*  Further, the Court emphasized that its holding would not "meaningfully change[] the division of labor" under § 157.  *Id.*  Most importantly, "nothing in the Supreme Court's opinion actually limits a bankruptcy court's authority to adjudicate the other 'core proceedings' identified in section 157(b)(2)."  *In re Safety Harbor Resort & Spa*, 456 B.R. at 715.  Indeed, one bankruptcy court has stated that "[t]o broadly apply *Stern's* holding is to create a mountain out of a mole hill."  *In re USDigital, Inc.*, 461 B.R. 276,  292 (Bankr. D. Del. 2011).

Despite the Supreme Court's intention to limit the application of its holding, several courts have expressed uncertainty about *Stern's* effect on the bankruptcy court's authority to enter final orders and judgments in other statutorily defined core proceedings.  *See e.g., In re Appleseed's Intermediate Holdings, LLC*, No. 11-807, 2011 WL 6293251 (D. Del. Dec. 15, 2011); *Boyd, LLC*, 2011 WL 5509873.  Arguably, the Supreme Court's reliance on *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)[6] has called into question whether bankruptcy courts can continue to enter final orders and judgments in fraudulent conveyance claims.  In *Stern*, the Court explained that *Granfinanciera's* "distinction between actions that seek 'to augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy res' reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case ... ."  *Stern*, 131 S.

---

[6] The issue in *Granfinanciera* was whether the Seventh Amendment grants certain defendants a right to a jury trial in an action by a trustee to avoid fraudulent transfers.  The Court stated that defendants were entitled to a jury trial on the fraudulent conveyance proceeding unless the claim fell within the public rights doctrine.  *Granfinanciera*, 492 U.S. at 56.  The Court held that a fraudulent conveyance action against a defendant who had not filed a proof of claim against the bankruptcy estate did not fall within the "public rights" exception.  *Id.*

Ct. at 2618 (quoting *Granfinanciera*, 492 U.S. at 56) (internal citations omitted) (emphasis in the original)).  Moreover, the Court stressed that the "question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Id.*  Many courts have viewed this language as a "new limit on the Court's constitutional authority to finally resolve other 'core' proceedings, such as fraudulent conveyance or preference actions."  *In re Safety Harbor Resort & Spa*, 456 B.R. at 717.

However, despite the reliance on *Granfinanciera* in *Stern*, the fact still remains that the sole issue in *Granfinanciera* was whether defendants who had not filed a proof of claim against the bankruptcy estate had a Seventh Amendment jury trial right in light of statutory authority that allowed a non-Article III tribunal to adjudicate the claims against them. *Granfinanciera*, 492 U.S. at 50 ("We are not obliged to decide today whether bankruptcy courts may conduct jury trials in fraudulent conveyance suits brought by a trustee against a person who has not entered a claim against the estate, either in the rare procedural posture of this case or under the current statutory scheme.  Nor need we decide whether, if Congress has authorized bankruptcy courts to hold jury trials in such actions, that authorization comports with Article III when non-Article III judges preside over the actions subject to review in, or withdrawal by, the district courts. ...  The sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." (internal citations omitted)).  Furthermore, *Granfinanciera* has been the law for over twenty years, and it was not until after the Court's decision in *Stern* that the bankruptcy court's authority to enter final orders and judgments in fraudulent conveyance or preference actions has been challenged.  *In re Safety Harbor Resort & Spa*, 456 B.R. at 717.

14

Taking the specific facts and issues in *Stern* and *Granfinanciera* into consideration, in addition to the Supreme Court's deliberate attempt to limit the scope of its holdings in both cases, this Court cannot extend the holding of *Stern* to fraudulent conveyance and preference actions. The statutorily core claim examined in *Stern* was a counterclaim based on state tort law and was "in no way derived from or dependent upon bankruptcy law." *See Stern*, 131 S. Ct. at 2618. In the present proceeding, Plaintiff's fraudulent conveyance and preference claims "arise under" the Bankruptcy Code, or at least, "arise in" a bankruptcy case. *See* 11 U.S.C. §§ 544, 547, 548, 550. The *Stern* decision itself acknowledged that whether a matter is core requires a consideration of "whether the action at issue stems from the bankruptcy itself" or is "derived from or dependent upon bankruptcy law ... ." *Stern*, 131 S. Ct. at 2618. Moreover, but for the bankruptcy, Plaintiff could not assert the fraudulent conveyance and preference claims against Defendants. *See In re Heller Ehrman LLP*, No. 08-32514, 2011 WL 4542512, at *5 (Bankr. N.D. Cal. Sept. 28, 2011) (citing *In re Mankin*, 823 F.2d at 1307 n.4) (Fraudulent transfer claims "cannot exist but for the debtor's insolvency, its inability to pay debts as they become due, or its unreasonably small capital–conditions which generally result in a bankruptcy."). Accordingly, Plaintiff's fraudulent transfer and preference claims are statutorily defined core claims to which the holding of *Stern* does not apply, and therefore the Bankruptcy Court has authority to enter final orders and judgments on such claims pursuant to 28 U.S.C. § 157(b)(1).

Next, Defendants ECR, Illinois Fuel, and Stephen Addington argue that despite the fact that they have all filed proofs of claim against the Debtor's estate, it would be unconstitutional for the Bankruptcy Court to enter final orders and judgments against them. *Katchen v. Landy*, 382 U.S. 323 (1966) and *Lagenkamp v. Culp*, 498 U.S. 42 (1990) held

15

that bankruptcy courts have the power to rule, without a jury trial, on avoidable preference claims against creditors who have filed proofs of claims against the bankruptcy estate. These Defendants assert that *Katchen* and *Lagenkamp* should be reconsidered in light of the fact that they rest on a faulty, previously unchallenged presumption, namely that bankruptcy courts have constitutional authority to rule on the validity of proofs of claim in the first place.  It appears that no party has asked the Supreme Court to consider whether non-Article III bankruptcy courts are constitutionally permitted to determine whether to allow creditor's claims.  Defendants contend that this is supported by footnote 7 from *Stern* and footnote 11 from *Granfinanciera*, where the Court noted that the parties to those cases had not requested reconsideration of the public rights framework for bankruptcy.  *See Stern*, 131 S. Ct. at 2614 n.7 ("We noted that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'" (quoting *Granfinanciera*, 492 U.S. at 56 n.11)).  For these reasons, Defendants ask this Court to overrule *Katchen* and *Lagenkamp* or distinguish them on the grounds that the parties therein did not contest the bankruptcy court's authority to rule on the validity of a proof of claim.  The Court refuses to do so.

Defendants are in essence asking the Court to consider the entire constitutionality of 28 U.S.C. § 157 and whether bankruptcy judges have the authority to not only adjudicate some but all bankruptcy matters.  Unless and until the Supreme Court rules that § 157 is unconstitutional, this Court will continue to adhere to its principles.  Since Defendants Larry Addington, Stephen Addington, Addington Land, AMI, Big Sandy, ECR, Illinois Fuel, and Task Trucking have all filed proofs of claim against the bankruptcy estate, Plaintiff's fraudulent conveyance and preferential transfer claims arise out of the claims allowance process, and therefore the Bankruptcy Court has authority to enter final orders and

16

judgments on such claims.  *See In re Washington Mfg. Co.*, 133 B.R. at 117 ("This result follows from the reasoning that once a creditor makes a claim in bankruptcy, the fraudulent conveyance issue becomes closely intertwined with the federal regulatory scheme of bankruptcy, and thus may be adjudicated by a non-Article III court without a jury." (citing *Granfinanciera*, 492 U.S. at 54-55)).

Finally, Defendant BB&T, who has filed a response in opposition to Plaintiff's and moving Defendants' motions to withdraw, argues that *Stern* has created a "no-man's land" of statutorily defined core claims that cannot be tried at all in the federal court system absent some other jurisdictional basis, because the Bankruptcy Court is not statutorily empowered to treat a core claim in the same manner as a claim falling within 28 U.S.C. § 157(c)(1), i.e., a non-core claim.  Thus, BB&T argues that if the Court does not sever the core claims against BB&T and allow them to remain in the Bankruptcy Court, the Court must dismiss these claims against BB&T for lack of jurisdiction as part of a withdrawal of the remainder of the case.[7]  This argument is without merit.

This Court's jurisdiction over bankruptcy matters stems from 28 U.S.C. § 1334, not § 157.  Pursuant to § 1334, the Court has original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." § 157(a) then allows this Court to refer actions within its bankruptcy jurisdiction to the bankruptcy judges of this district.  Thus, BB&T's argument that the core claims against it must remain in Bankruptcy Court or be dismissed from this Court for lack of jurisdiction is wholly incorrect.  If this Court does not have jurisdiction over this proceeding pursuant to

---

[7] Defendant BB&T asserts that the claims against it are "core" based on the stipulation entered by the Bankruptcy Court (11-01041; Doc. # 50).

17

§ 1334, then the Bankruptcy Court also lacks jurisdiction to hear the case.

BB&T's argument also raises an issue that has recently been addressed in several bankruptcy cases post-*Stern*, namely that if there are statutorily defined core claims that the bankruptcy courts cannot finally adjudicate, there is no statutory authority to allow them to submit proposed findings of fact and conclusions of law to the district court on such claims.  This argument is unpersuasive and has been repeatedly rejected by numerous bankruptcy and district courts.

In *Stern*, the Supreme Court specifically stated that the "removal of counterclaims such as [debtor's] from core bankruptcy jurisdiction [does not] meaningfully change[] the division of labor in [ § 157]." *Stern*, 131 S. Ct. at 2620.  Since Congress delegated broader authority to bankruptcy courts in core matters than in non-core matters, including the authority to hear and determine all cases and enter appropriate orders, it simply would not make sense to preclude bankruptcy courts from also submitting  proposed findings of fact and conclusions of law to the district court on core matters.  "Removing fraudulent conveyance actions from core bankruptcy jurisdiction, and also determining bankruptcy courts could not enter proposed findings of fact and conclusions of law on such actions, would meaningfully change the division of labor in the statute between bankruptcy and district courts." *In re Heller Ehrman LLP*, 464 B.R. 348, 355-56 (N.D. Cal. Dec. 13, 2011). Moreover, as stated above,  § 157(a) allows district courts to refer actions within its bankruptcy jurisdiction to the bankruptcy judges of their districts, so the distinction between core or non-core is immaterial.  Indeed, several courts have reached this same conclusion. *See e.g., In re Rothstein, Rosenfeldt, Adler, P.A.*, No. 11-62612, 2012 WL 882497, at *3 (S.D. Fla. Mar. 14, 2012) ("[T]he majority of district and bankruptcy courts that have

addressed this argument conclude that what is certain is that the Supreme Court did not intend to deprive the bankruptcy courts of any role in dealing with fraudulent conveyance actions."); *In re Tolliver*, 464 B.R. 720, 734-35 (Bankr. E.D. Ky. Feb. 2, 2012) ("[T]he Court expressly rejects the conclusion ... that it has no statutory authority to render findings of fact and conclusion[s] of law for core proceedings that it may not constitutionally hear."); *Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11-6847, 2012 WL 264180, at *6-7 (S.D.N.Y. Jan. 30, 2012) (holding that bankruptcy courts may issue proposed findings of facts and conclusions of law in fraudulent transfer actions); *In re The Mortgage Store, Inc.*, No. 11-0439, 2011 WL 5056990, at *6 (D. Haw. Oct. 5, 2011) ("[T]he court has little difficulty in finding that Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain "core" proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and recommendations.").

One final matter deserves brief comment.  In the present case, a majority of the parties entered into a stipulation designating the numerous claims against each Defendant as either core or non-core, and the stipulation was thereafter filed by the Bankruptcy Court. (11-1041; Doc. # 20).  Defendant Frost Brown Todd did not participate in the stipulation. Moreover, each Defendant took no position as to whether any other Defendant's designation of claims as core or non-core was correct.  Indeed, in Defendants Horsepower Leasing, EBA Development, Bruce Addington, and Erik Addington's Reply to the Response filed by BB&T and in further support of their Motion to Withdraw the Reference (11-129; Doc. # 10), they argue that the claims asserted against BB&T are incorrectly classified as core claims.  Despite the stipulation filed by the Bankruptcy Court, in deciding whether to

19

withdraw the reference, this Court is not bound by the Bankruptcy Court's determination of the core/non-core issues. *See In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 379-80 (S.D.N.Y. 2008) ("A motion to withdraw the reference, which is addressed to the sound discretion of the District Court, permits that court to address the full range of issues relating to the proper forum in which to litigate the pending dispute. ... [T]he District Court does not engage in appellate 'review' of any determination of the Bankruptcy Court; it simply addresses a legal issue relevant to its own exercise of discretion with respect to the division of labor between the District Court and its bankruptcy subdivision."). Furthermore, at oral argument, counsel for Frost Brown Todd indicated that the stipulation was simply done as a formality so the parties would be able to file their motions to withdraw. Each party unilaterally designated its own claims, and Judge Scott made no independent determination regarding the designation of claims as core or non-core. Therefore, the Court need not consider it.

In conclusion, the Court finds that the holding of *Stern* does not apply to the fraudulent transfer and preference claims in Plaintiff's Amended Complaint. Therefore, core claims predominate in this case, and this factor weighs in favor of denying the motions to withdraw. However, even if the Supreme Court subsequently found that it was unconstitutional for bankruptcy judges to enter final orders and judgments on fraudulent transfer and preference proceedings, they would still have the authority to submit proposed findings of fact and conclusions of law to the district court on these matters.

### 2.   Other Factors for the Court to Consider

As discussed above, courts should consider the following factors when determining whether cause exists for permissive withdrawal of the reference: (1) judicial economy; (2)

uniformity in bankruptcy administration; (3) reducing forum shopping and confusion; (4) fostering economical use of the debtor's and creditor's resources; (5) expediting the bankruptcy process; and (6) the presence of a jury demand.  *In Re Angelucci*, 2009 WL 798805, at *3 (citing *Big Rivers Elec. Corp.*, 182 B.R. at 754).  Since none of the parties have made allegations of forum shopping and no evidence has been presented on the issue, the Court need not address this factor.

### i.    Judicial Economy and Uniformity in Bankruptcy Administration

Given that bankruptcy cases are regularly handled by bankruptcy judges and that they have special expertise in handling these particular cases, withdrawing the reference would not promote judicial economy or uniformity in bankruptcy administration.  The claims against Defendants are, for the most part, quintessential core bankruptcy claims, including claims to recover preferences and fraudulent transfers under 28 U.S.C. § 157(b)(2)(F), (H).  Of the 107 counts asserted by Plaintiff, the majority are for avoidance and/or recovery of fraudulent transfers and are premised on Sections 544, 548 and 550 of the Bankruptcy Code.[8]  As stated above, such adversary proceedings are clearly core proceedings within the meaning of § 157(b)(2)(H).  *See Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 863 (D. Minn. 2011) (quoting *In re Wencl*, 71 B.R. 879, 882 (Bankr. D. Minn. 1987) ("In point of fact, the process of garnering fraudulently-transferred assets back into the bankruptcy

---

[8]   Although the moving parties assert that the non-core claims predominate from a monetary perspective, those claims seek to recover damages for various state law theories of liability.  Because the alleged damages which flow from the non-core claims are based on a purported long-term fraudulent scheme, when compared to the core claims which only include specific monetary transfers to various defendants, it is not surprising that the recovery sought for the non-core claims is significantly higher than the amount sought to be recovered for core claims.  Despite the moving parties' arguments to the contrary, that disparity does not tip the scales in favor of withdrawal.

estate–to the resultant benefit of all creditors–is one of those proceedings which is by its very nature essential to the adjustment and restructuring of debtor-creditor relationships that is at the core of federal bankruptcy jurisdiction.")); *see also Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11-cv-6847, 2012 WL 264180, at \*7 (S.D.N.Y. Jan. 30, 2012) ("The Bankruptcy Court has a wealth of knowledge and experience with fraudulent transfer claims ... .").

The Court finds that the judicial economy and uniformity in bankruptcy administration factors  weigh in favor of denying the moving parties' motions to withdraw.[9]  Withdrawal of the reference at this early stage of the litigation would result in losing the benefit of the Bankruptcy Court's expertise in both the law and facts.  This proceeding is in its early stages.  However, Judge Scott has presided over the underlying bankruptcy action since 2009.  Since that time, there have been numerous adversary proceedings filed.  Allowing the case to remain with the Bankruptcy Court means that the discovery issues, settlement conferences and motion practice will be supervised most efficiently by the same court that is currently supervising the other adversary proceedings filed in connection with the bankruptcy estate.  Although Judge Scott may not have any specific knowledge of the facts of this adversary proceeding because discovery has yet to commence, he has expansive knowledge of the Debtor's estate and several of the Defendants who have filed proofs of claim against the estate.  Moreover, it is not Judge Scott's familiarity with the facts of this case, but rather the Bankruptcy Court's particularized knowledge of bankruptcy matters in general, that convinces the Court that judicial economy and uniformity in bankruptcy

---

[9] The Court also finds that the expediting the bankruptcy process factor coincides with the Court's analysis of the judicial economy and uniformity in bankruptcy administration factors.

administration would be best served by allowing this case to remain in the Bankruptcy Court for pretrial proceedings.[10]

Furthermore, since a majority of the claims are core, the bankruptcy judge has the authority to enter final orders and judgments on these claims. As for the non-core claims, even though the bankruptcy judge may only issue proposed findings of fact and conclusions of law, these recommendations "will narrow the issues to be resolved by this Court." *In re Extended Stay, Inc.*, --- B.R.----, 2011 WL 5532258, at *9-10 (S.D.N.Y. Nov. 10, 2011) (The court's review of the bankruptcy court's findings of fact and conclusions of law is not outside "the usual process," since "[p]arties frequently appeal bankruptcy court decisions to the district court" and district courts frequently review reports and recommendations from Article I tribunals, such as magistrate courts.). Finally, keeping the case with the Bankruptcy Court accords with the Supreme Court's statement in *Stern* that the decision does not "meaningfully change[] the division of labor" in 28 U.S.C. § 157 between the bankruptcy and district courts. *Stern*, 131 S. Ct. at 2620. Accordingly, the Court finds that judicial economy and uniformity in the administration of bankruptcy would not be served by withdrawing the reference at this time.

### ii. Costs to the Parties

The moving parties argue that handling all claims in one venue would be an economical use of all parties' resources. Moreover, since discovery has not commenced, they assert that withdrawal of the reference will not cause any additional undue burden, delay or cost to the parties. Given the considerations above concerning judicial economy

---

[10] For the same reason, the upcoming retirement of Judge Scott in October 2012 does not compel the granting of the motions to withdraw the reference.

and uniformity in the administration of bankruptcy, the Court finds this argument unpersuasive. Even if this Court is ultimately needed to adjudicate or preside over a jury trial on certain claims, it is not clear that this would cause unnecessary delay and costs, especially considering the efficiency of having the Bankruptcy Court handle all pre-trial matters in the first instance. Furthermore, Judge Scott's upcoming retirement in October 2012, while certainly relevant to the Court's consideration, is not dispositive of the Court's adjudication of the motions to withdraw the reference.

### iii.   Jury Trial Demand

Also relevant to the inquiry is whether Defendants are entitled to a jury trial and, if so, whether the trial is likely and whether the Bankruptcy Court has the power to hold such a jury trial. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101-02 (2d Cir. 1993). The Bankruptcy Court may only hold a jury trial if all the parties so agree and the bankruptcy judge is "specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 157(e). In the present case, although Plaintiff has consented to a jury trial before the Bankruptcy Court, none of the Defendants have done so besides BB&T.

In the present matter, it is undisputed that several Defendants are entitled to a jury trial. A creditor who has not filed a proof of claim in the underlying debtor's bankruptcy proceedings has a Seventh Amendment right to a jury trial when the trustee of the bankruptcy estate sues the creditor in district court to recover monies for an actual or constructive fraudulent conveyance under 11 U.S.C. § 548(a). *Granfinanciera,*, 492 U.S. at 56. The right to a jury trial exists despite the statutory designation of fraudulent conveyance actions as "core proceedings." 28 U.S.C. § 157(b)(2)(H). The Supreme Court

ruled that although Congress may assign jurisdiction over claims asserting a "public" right, Congress lacks the power to deny parties asserting "private" rights of their constitutional right to a jury trial. The Court stated that fraudulent transfer suits are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a [debtor] corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res" and therefore concluded that a bankruptcy trustee's right to recover a fraudulent conveyance is more accurately characterized as a private right rather than a public right. *Granfinanciera*, 492 U.S. at 56.

Following *Granfinanciera*, the Supreme Court reiterated its ruling that defendants who had filed proofs of claim in the underlying bankruptcy action were not entitled to a jury trial in a preference action. *Lagenkamp v. Culp*, 498 U.S. 42, 44 (1990). The Court found that if the creditor filed a proof of claim and was then met with a preference action, "that action becomes part of the claims-allowance process which is triable only in equity." *Id.* "In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*." *Id.* (emphasis in the original). Thus, there is no Seventh Amendment right to a jury trial for defendants who had filed proofs of claim in the underlying bankruptcy action. *Id.*

As stated above, most of the Defendants in this proceeding have not filed proofs of claim against the bankruptcy estate. Accordingly, these Defendants are entitled to a jury trial on the fraudulent conveyance and preferential transfer claims. However, Defendants ECR, Illinois Fuel, Stephen Addington, Larry Addington, Addington Land, AMI, Big Sandy, and Task Trucking have all filed proofs of claim in the underlying bankruptcy action and are

25

therefore not entitled to a jury trial on such claims.

Several of the moving Defendants argue that their right to a jury trial weighs heavily in favor of withdrawal of the reference.  Because these Defendants did not consent to a jury trial in the Bankruptcy Court, they contend the Bankruptcy Court lacks jurisdiction to conduct the trial and therefore the case should be withdrawn to the district court.  While the Defendants are correct that the Bankruptcy Court lacks the authority to conduct a jury trial without the consent of all of the parties, the Court disagrees that this factor compels withdrawal of the reference at this juncture.  The parties' right to a jury trial does not remove the bankruptcy judge's authority to enter final orders and judgments when necessary in core proceedings.  *See In re Petters Co., Inc.*, 440 B.R. 805, 810 (Bankr. D. Minn. 2010) ("In the case of a proceeding where a party is entitled to a jury trial, the bankruptcy judge will retain authority over the proceeding until–at the earliest–it is established that a trial is necessary–i.e., all possibility of resolution via summary adjudication under Rule 56 or otherwise has been exhausted.").

In *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007), the Ninth Circuit examined cases from numerous courts that had addressed the issue of whether, once a jury request is made, a bankruptcy court must relinquish jurisdiction and the case be transferred to the district court.  "Universally these courts have all reached the same holding, that is, a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court."  *Id.*  Rather, the bankruptcy court may retain jurisdiction over the matter for pre-trial proceedings.  The rationale for such a holding was stated as follows:

First, allowing the bankruptcy court to retain jurisdiction over pre-trial matters, does not abridge a party's Seventh Amendment right to a jury trial. ... A bankruptcy court's pre-trial management will likely include matters of "discovery," "pre-trial conferences," and routine "motions," which obviously do not diminish a party's right to a jury trial. ... Moreover, even if a bankruptcy court were to rule on a dispositive motion, it would not affect a party's Seventh Amendment right to a jury trial, as these motions merely address whether trial is necessary at all.

Second, requiring that an action be immediately transferred to district court simply because of a jury trial right would run counter to our bankruptcy system. ... Under our current system Congress has empowered the bankruptcy courts to "hear" Title 11 actions, and in most cases enter relevant "orders." As has been explained before, this system promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them. ... Accordingly, if we were to require an action's immediate transfer to district court simply because there is a jury trial right we would effectively subvert this system. Only by allowing the bankruptcy court to retain jurisdiction over the action until trial is actually ready do we ensure that our bankruptcy system is carried out.

*Id.* at 787-88 (internal citations omitted).  Thus, even if withdrawal of the reference is ultimately necessary for a jury trial, the court need not withdraw the reference immediately.

## IV.   CONCLUSION

Withdrawal of the reference is the exception to the general rule that bankruptcy matters should be adjudicated in the bankruptcy court.  *Container Recycling Alliance v. Lassman*, 359 B.R. 358, 360 (D. Mass. 2007).  For the reasons stated herein, because withdrawal is not required at this time, and the moving parties have not shown cause for immediate withdrawal of the reference to the Bankruptcy Court, Defendant Business Aircraft Leasing, Inc.'s Motion to Withdraw the Reference (11-128; Doc. # 1), Defendants Bruce Addington, Erik Addington, EBA Development LLC, and Horsepower Leasing, LLC's Motion to Withdraw the Reference (11-129; Doc. # 1), Defendants Machinery Sales and Service, LLC, John C. Smith, and Jeffrey Muncy's Motion to Withdraw the Reference (11-

130; Doc. # 1), Defendants Energy Coal Resources, Inc., Illinois Fuel Company, Inc., and Stephen Addington's Motion to Withdraw the Reference (11-131; Doc. # 1), Defendants Robert Addington, Frank Bennett, Julie Hudson, David Jones, Mark Garrett Smith, and Gregory Stumbo's Motion to Withdraw the Reference (11-132; Doc. # 1), Defendants Larry Addington, Addington Aviation, LLC, Addington Land Company, Appalachian Machinery, Inc., Big Sandy Properties, LLC, Carbon Fuels Illinois, LLC, Larry Austin Dickerson, Midwestern Biofuels, LLC, Pyramid Island Development, Inc., Kathryn Reid, and Task Trucking, Inc.'s Motion to Withdraw the Reference (11-133; Doc. # 1), Plaintiff Official Committee of Unsecured Creditors' Conditional Motion to Withdraw the Reference (11-134; Doc. # 1), Defendant Jet Support Services, Inc.'s Motion to Withdraw the Reference (11-135; Doc. # 1), and Defendant Tri-State Airport Authority's Motion to Withdraw the Reference (11-136; Doc. # 1) are hereby **DENIED**.

This 18th day of April, 2012.



Signed By:

_David L. Bunning_

**United States District Judge**

G:\DATA\Opinions\Ashland\0-11-128-136 MOO Denying Motions to Withdraw.wpd